ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| VILMARIE DOMÍNGUEZ LOZADA<br><br>Recurrida<br><br><br>V.<br><br>MUNICIPIO AUTÓNOMO DE CATAÑO<br><br>Peticionario | TA2025CE00617 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.: CT2025CV00249<br><br>Sobre:<br><br>Ley de Transparencia y Procedimiento Expedito para Acceso a la Información Pública (Ley Núm. 141-2019) |

Panel integrado por su presidente, el Juez Rivera Torres[1], el Juez Ronda Del Toro y la Juez Lotti Rodríguez

**Ronda Del Toro, Juez Ponente**

## SENTENCIA

En San Juan, Puerto Rico, a 23 de octubre de 2025.

En este caso se presentó *Recurso de Certiorari* por el Municipio Autónomo de Cataño (en adelante peticionario o Municipio) el 14 de octubre de 2025. A través del sistema SUMAC, se verificó que en esa misma fecha se cumplió con la notificación de este al Tribunal de Primera Instancia, Sala de Bayamón y a la parte recurrida.

Juntamente con el Recurso se presentó por el Municipio una Moción en Auxilio de Jurisdicción, que se concedió mediante Resolución del pasado 15 de octubre de 2025. El caso en el TPI está paralizado desde entonces. En esa misma Resolución se le

---

[1] Véase Orden Administrativa OATA-2025-212 en la que se designó a el Hon. Rivera Torres en sustitución de la Hon. Grana Martínez.

concedió a la parte recurrida comparecer en 5 días, contados a partir de la notificación de esa Resolución, lo que esta no hizo.

Conforme indicamos en la Resolución del pasado 15 de octubre de 2025, transcurrido el término concedido a la recurrida para expresarse, el caso esta perfeccionado para ser resuelto, lo que aquí hacemos.

Por las razones que exponemos a continuación, expedimos el auto solicitado y desestimamos el caso presentado en TPI.

**I.**

El 30 de junio de 2025, la peticionaria en el TPI, aquí recurrida, como legisladora municipal en la Legislatura Municipal de Cataño, realizó, dirigió y entregó una carta al Alcalde del Municipio de Cataño en solicitud de información.[2]

En la Solicitud de Información la parte recurrida interpela al Municipio y le solicita, por medio de un interrogatorio, que conteste las siguientes preguntas: "Específicamente, solicito respuesta clara y documentada a los siguientes puntos:

1. ¿Cuál es la posición oficial que ocupa el Sr. Edwin González Carmona, dentro del municipio?

2. ¿Existe algún contrato, nombramiento o acuerdo entre el Municipio de Cataño y el Sr. Edwin González Carmona? En caso de afirmativo, favor incluir copia del contrato o documento correspondiente.

3. ¿Por qué se le permite al Sr. Edwin González Carmona, emitir instrucciones a empleados municipales, aun cuando no ocupa un cargo electo ni se ha hecho público vinculo formal con el municipio?

4. ¿Por qué tiene acceso directo a comunicaciones internas como los chats oficiales del municipio?

---

[2] Ver Anejo a la Entrada 1 de SUMAC.

5. ¿Por qué se le ha asignado oficina en el octavo piso del edificio municipal?

6. De ser Contratista, favor indicar bajo que contrato opera, personal o nombre de su empresa, contrato de renta.

7. ¿Cuál es la fuente de fondos utilizada para costear su presencia, servicios u oficina dentro del municipio?"

En dicha carta, suscrita por la aquí recurrida como legisladora del poder legislativo del Municipio, se hacen las preguntas antes indicadas al Municipio sobre el puesto o contrato que tiene o tenía una persona en el Municipio. Luego, el 22 de julio de 2025, dicha parte recurrida presentó esta demanda ante el TPI, solicitando la misma información que había solicitado por carta al Municipio, pero en la demanda ante el TPI usó el formulario preparado por el Poder Judicial para Presentar Recurso Especial de Revisión Judicial Para el Acceso a Información Pública. A los 22 días de haber entregado la carta como legisladora municipal, somete este reclamo al TPI por derecho propio. El mismo 22 de julio se expide por la secretaría una Notificación de Recurso Especial de Revisión Judicial para el Acceso a Información Pública. Se ordena al Municipio a que comparezca por escrito en el término de 10 días.

El 31 de julio de 2025, mediante comunicación escrita enviada por correo electrónico, el Oficial de Información del Municipio le notificó a la parte recurrida la contestación a la Solicitud de Información y la posición del Municipio. El Municipio apoyó su posición en planteamientos legales sustentados en ley, reglamento y jurisprudencia y sostuvo que la Solicitud de Información no cumple con los requisitos y el ámbito de aplicación dispuestos en la Ley Núm. 141-2019, y que su solicitud debía canalizarse por los procedimientos internos y colegiados que rigen

las investigaciones y requerimientos de información de la Legislatura Municipal de Cataño.

El 7 de agosto de 2025 el Municipio comparece por escrito, mediante representación profesional y pide 10 días adicionales para completar evaluación del caso.[3]

El 8 de agosto de 2025 el TPI emite Orden en la que acepta la representación legal y se concede la prórroga solicitada.

Adicionalmente, la aquí recurrida, alrededor de la fecha en que presenta esta solicitud, presenta, además, otros casos por derecho propio, todos ADICIONALES y separados de este, también contra el Municipio de Cataño, sin que sepamos de que tratan esos otros casos y a pesar de que el Municipio solicitó la consolidación de todos los casos en uno solo, pues aparenta que todos tratan de solicitud de información, el TPI no permitió dicha consolidación.

El 18 de agosto de 2025 el Municipio presenta ante el TPI una Solicitud de Consolidación en la que detalla que ha sido notificado por dicho Tribunal de los siguientes casos: CT2025CV00250, CT2025CV00252, CT2025CV00253, CT2025CV00264, CT2025CV00265, CT2025CV00266 y CT2025CV00267. En todos esos casos, se alegó por el Municipio," plantean controversias sustancialmente similares o relacionadas con el mismo núcleo de hechos que originó el presente caso." El 20 de agosto de 2025, sin solicitar la posición de la parte que había radicado los casos ni señalar vista para evaluar ese planteamiento, el TPI negó la consolidación.[4]

---

[3] Ver Entrada 3 de SUMAC.
[4] Ver entradas en SUMAC del 18 de agosto y del 20 de agosto pasado. Tomamos conocimiento judicial de las Sentencias dictadas por el TPI en los casos BY2025CV04347 el 3 de octubre de 2025; CT2025CV00298 el 6 de octubre de 2025 y los casos consolidados CT2025CV00264, CT2025CV00265, CT2025CV266, CT2025CC00267 del 10 de octubre de 2025. En todos esos casos la parte recurrente en TPI es la misma que en este caso y todos son reclamaciones contra el Municipio de Cataño.

En el recurso especial presentado ante el TPI, se alegó que solicitaba información pública sobre un nombramiento o contrato en dicho Municipio, aquí peticionario. También presentó en el mismo Tribunal, ese caso que aquí atendemos y los otros siete (7) casos que antes detallamos, de forma separada, pero buscando similares remedios. Por los números brindados como asignados a cada uno de esos casos, el caso (de los ocho (8) que tenemos conocimiento) con el número más antiguo, es el que aquí atendemos. Nunca en ese documento preimpreso del Poder Judicial, que es la solicitud de revisión que la recurrida utilizó, indica que es Legisladora Municipal de Cataño, lo que, si surge de la carta entregada al Municipio, como ya dijimos, el 30 de junio pasado.

La parte aquí peticionaria presenta una Moción de Desestimación ante TPI y mediante Orden del 26 de agosto de 2025, el TPI indica que no se desestima. Ordenando además proveer la información solicitada, habiendo ese mismo 26 de agosto, la parte aquí recurrida presentado su Oposición a Moción de Desestimación.

El 10 de septiembre pasado, la aquí recurrida, Sra. Domínguez, presenta ante el TPI una Moción exponiendo su interpretación de la Ley de Transparencia y Procedimiento Expedito para el Acceso a la Información Pública, Ley 141 de 1 de agosto de 2019, según enmendada.

El 11 de septiembre de 2025, la parte aquí peticionaria presenta una Solicitud de Reconsideración. El día después, o sea el 12 de septiembre pasado el TPI emite una Orden concediendo un término final de cinco (5) días para cumplir la Orden del Tribunal o se impondrán sanciones económicas y desacato.

El 17 de septiembre de 2025 la parte aquí recurrida presenta Moción Solicitando Orden y el 18 de septiembre la Juez reitera a la parte aquí peticionaria que tiene cinco (5) días para cumplir. El 26 de septiembre la parte aquí recurrida presenta Moción Solicitando Declaración de Desacato.

El pasado 14 de octubre de 2025, la parte aquí peticionaria, presenta este recurso de Certiorari en el que señala dos (2) señalamiento de error:

PRIMER ERROR: ERRO EL TPI EN LA APRECIACION DE LOS HECHOS Y EL DERECHO QUE SUSTENTAN LA MOCION EN OPOSICION Y EN SOLICITUD DE DESESTIMACION DE RECURSO POR NO CUMPLIR CON LOS REQUISITOS DE LA LEY NUM. 141-2019 PRESENTADA POR EL MUNICIPIO AL DENEGAR, MEDIANTE ORDEN, LA DESESTIMACION DEL RECURSO ESPECIAL, A PESAR QUE LA PARTE RECURRENTE-PETICIONADA COMPARECE EN SU CARÁCTER OFICIAL DE LEGISLADORA MUNICIPAL A SOLICITAR INFORMACION A LA RAMA EJECUTIVA INVOCANDO LAS DISPOSICIONES DE LA LEY NUM. 141-2019 CUANDO ESTO CONSTITUYE UNA USURPACION DE LOS PODERES Y FACULTADES DELEGADOS AL PRESIDENTE DE LA LEGISLATURA MUNICIPAL, VIOLENTA LAS DISPOSICIONES DE LA LEY 107-2020, SEGÚN ENMENDADA, CONOCIDA COMO CODIGO MUNICIPAL DE PUERTO RICO, EL REGLAMENTO DE LA LEGISLATURA MUNICIPAL DE CATAÑO Y LA SEPARACION DE PODERES DISPUESTA EN LA CONSTITUCION DE PUERTO RICO.

SEGUNDO ERROR: ERRO EL TPI EN LA APRECIACION DE LOS HECHOS Y EL DERECHO AL DICTAR UNA ORDEN DENEGANDO LA DESESTIMACION DEL RECURSO ESPECIAL PRESENTADO POR LA PARTE RECURRENTE TODA VEZ QUE LA SOLICITUD DE INFORMACION NO CUMPLE CON LOS REQUISITOS DE LA LEY NUM. 141-2019 NI CONSTITUYE UN "DOCUMENTO PUBLICO" SEGÚN DEFINIDO EN LA LEY NUM. 17-2020, SEGÚN ENMENDADA, CONOCIDA COMO LEY DE ADMINISTRACION Y CONSERVACION DE DOCUMENTOS PUBLICOS PARA EL SIGLO XXI POR CONSTITUIR UNA INTERPELACION.

Veamos el análisis del derecho aplicable.

**II.**

**A.**

El recurso de *certiorari* es un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un foro inferior. BPPR v. SLG Gómez-López,

213 DPR 314, 336 (2023); Rivera et al. v. Arcos Dorado et al., 212 DPR 194, 207 (2023); Torres González v. Zaragoza Meléndez, 211 DPR 821, 846-847 (2023); Caribbean Orthopedics v. Medshape et al., 207 DPR 994, 1004 (2021); 800 Ponce de León v. AIG, 205 DPR 163, 174-175 (2020); IG Builders *et al*. v. BBVAPR, 185 DPR 307, 337-338 (2012). Contrario al recurso de apelación, la expedición o no del auto de *certiorari* solicitado descansa en la sana discreción del Foro Apelativo. Torres González v. Zaragoza Meléndez, *supra,* pág. 847; Medina Nazario v. McNeil Healthcare LLC, 194 DPR 723, 729 (2016).

Al evaluar un recurso de *certiorari* nuestros oficios se encuentran enmarcados en el Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, que en su Regla 40 señala los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de *certiorari*. Torres Martínez v. Torres Ghigliotty, 175 DPR 83, 97 (2008). La referida regla dispone lo siguiente:

> El tribunal tomara en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> C. Si ha mediado prejuicio, parcialidad, o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

4 LPRA Ap. XX-B, R. 40;
BPPR v. Gómez-López, *supra*, pág. 337.

Como regla general, los foros apelativos no intervendrán en la discreción de los foros primarios a no ser que las decisiones emitidas resulten arbitrarias o en un abuso de su discreción. BPPR v. SLG Gómez-López, *supra*, pág. 334; VS PR, LLC v. Drift-Wind, 207 DPR 253, 273 (2021). El adecuado ejercicio de discreción judicial está estrechamente relacionado con el concepto de razonabilidad. BPPR v. SLG Gómez-López, *supra*, pág. 335; SLG Zapata-Rivera v. J.F. Montalvo, 189 DPR 414, 434-435 (2013); Rivera y otros v. Bco. Popular, 152 DPR 140, 155 (2000).

**B.**

El derecho al acceso a la información pública es principio inherente de toda sociedad democrática, de carácter fundamental y estirpe constitucional. *Engineering Services v. AEE*, 205 DPR 136, 145 (2020). Está estrechamente ligado a los derechos de libertad de palabra, prensa y asociación, pues, mediante el efectivo ejercicio de este derecho, se cumplen los siguientes propósitos: (1) facilita la libre discusión de los asuntos gubernamentales, (2) es posible evaluar y fiscalizar la función pública de forma más adecuada, y (3) garantiza una participación ciudadana más efectiva e inteligente en los procesos gubernamentales. *Kilómetro 0 v. Pesquera López et al.*, 207 DPR 200, 207-208 (2021). A través de este derecho, se garantiza que la ciudadanía tenga acceso y pueda examinar el contenido de los documentos compilados por el Estado en el ejercicio de sus

gestiones gubernamentales. *Íd*. En consecuencia, el Estado no puede, de forma caprichosa o arbitraria, negar a la ciudadanía acceso a la información que recopila como parte de la gestión pública. *Íd*.

Existen varias disposiciones legales que recogen este principio constitucional. Por ejemplo, el Art. 409 del Código de Enjuiciamiento Civil, reconoce que "[t]odo ciudadano tiene derecho a inspeccionar y sacar copia de cualquier documento público de Puerto Rico, salvo lo expresamente dispuesto en contrario por la ley". 32 LPRA sec. 1781. Por su parte, el Art. 2.015 del Código Municipal de Puerto Rico dispone que "[c]ualquier persona podrá solicitar que se le permita inspeccionar, copiar, fotocopiar u obtener copias certificadas de cualquier documento público de naturaleza municipal, salvo que expresamente se disponga lo contrario por cualquier ley al efecto". 21 LPRA sec. 7175.

Ahora bien, para que un ciudadano pueda valerse del derecho al acceso a la información, es necesario que, en efecto, la información solicitada sea pública. *Bhatia Gautier v. Gobernador*, 199 DPR 59, 81 (2017). Al respecto, el Art. 3 de la Ley Núm. 5 del 8 de diciembre de 1955, 3 LPRA sec. 1001, mejor conocida como la Ley de Administración de Documentos Públicos de Puerto Rico, define el término de documento público de la siguiente manera:

> *Es todo documento que se origine, conserve o reciba en cualquier dependencia del Estado Libre Asociado de Puerto Rico de acuerdo con la ley o en relación con el manejo de los asuntos públicos y que de conformidad con lo dispuesto en la sec. 1002 de este título se haga conservar que se requiera conservar permanentemente o temporalmente como prueba de las transacciones o por su valor legal. Incluye aquellos producidos de forma electrónica que cumplan con los requisitos establecidos por las leyes y reglamentos.*

A su vez, el Art. 2.015 del Código Municipal de Puerto Rico, *supra*, dispone que:

> *[. . .] A los fines de este Artículo, "documento público" significará cualquier escrito, impreso, papel, libro, folleto, fotografía, fotocopia, película, microficha, cinta magnetofónica, mapa, dibujo, plano, cinta, disco compacto o cualquier otro material leído por máquina e informativo, sin importar su forma o características físicas y que se origine, se reciba o se conserve en cualquier unidad administrativa, dependencia u oficina del municipio de acuerdo con este Código; y cualquier escrito que se origine en otra agencia del Gobierno estatal o del Gobierno federal o que se origine por cualquier persona privada, natural o jurídica, en el curso ordinario de transacciones con el municipio y se conserven permanente o temporalmente en cualesquiera unidades administrativas, oficinas o dependencias del municipio por su utilidad administrativa, valor legal, fiscal, histórico o cultural.*

Como regla general, si la información solicitada puede catalogarse como documento público, según definido en los estatutos que anteceden, el ciudadano tiene legitimación activa requerir su inspección. *Engineering Services v. AEE*, *supra*, a la pág. 147. No obstante, el derecho a información pública no es absoluto ni ilimitado. A modo de excepción, existen ciertas circunstancias en las que el Estado puede negarse a divulgar información, aunque sea pública. En estos casos, resulta indispensable que el Estado demuestre uno de los siguientes reclamos: (1) que una ley declara que la información es confidencial; (2) que la comunicación está protegida por algún privilegio evidenciario; (3) cuando revelar la información pueda lesionar derechos fundamentales de terceros; (4) que se trata de un confidente, según la Regla 515 de Evidencia;[5] o (5) que se trata de información oficial, conforme la Regla 514 de Evidencia.[6] *Kilómetro 0 v. Pesquera López et al.*, *supra*, a la pág. 210. De presentarse alguno de estos fundamentos, "el Estado estaría

---

[5] 32 LPRA Ap. VI
[6] *Íd*.

legitimado para restringir el acceso de los ciudadanos a documentos de carácter público". *Colón Cabrera v. Caribbean Petroleum*, 170 DPR 582 (2007). En ese contexto, por tratarse de una negativa justificada, el Estado puede imponer aquellas limitaciones que entienda necesarias. *Íd*.

### C.

La Ley Núm. 141-2019, 3 LPRA sec. 9911 *et seq*., también conocida como la Ley de Transparencia y Procedimiento Expedito para el Acceso a la Información Pública, se aprobó con el fin de proveer un procedimiento uniforme para obtener la información pública que se genera o custodia en las entidades gubernamentales de forma sencilla, ágil y económica. Véase, Exposición de Motivos de la Ley Núm. 141-2019.

El Art. 3 de la Ley Núm. 141-2019, 3 LPRA sec. 9913, recoge la política pública sobre el acceso a la información pública. Específicamente, se establece:

1) *La información y documentación que produce el gobierno se presume pública y accesible a todas las personas por igual.*

2) *La información y documentación que produce el gobierno en sus estudios, transacciones y en el ejercicio de la autoridad pública, de manera directa o delegada, son patrimonio y memoria del pueblo de Puerto Rico.*

3) *El derecho constitucional de acceso a la información requiere la transparencia gubernamental.*

4) *Toda información o documento que se origine, conserve o reciba en cualquier dependencia del Gobierno, aunque se encuentre bajo la custodia de un tercero, se presume público y debe estar accesible al Pueblo y la prensa.*

5) *El derecho de acceso a la información pública es un pilar constitucional y un derecho humano fundamental.*

6) *El acceso a la documentación e información pública tiene que ser ágil, económico y expedito.*

7) *Toda persona tiene derecho a obtener la información y documentación pública, sujeto a las normas y excepciones aplicables*.

8) *El Gobierno de Puerto Rico establece en la presente Ley una política de apertura a la información y documentación, que incluya la disponibilidad de la tecnología y de los avances necesarios para hacer valer el derecho de los solicitantes a acceder a la información y documentación pública de forma oportuna, objetiva, veraz, completa, reutilizable, procesable y disponible en formatos accesibles, inalterados e íntegros.*

Por otra parte, las disposiciones del precitado estatuto son de aplicación "al Gobierno de Puerto Rico, entiéndase la Rama Legislativa, Rama Judicial y Rama Ejecutiva, incluyendo en ésta a todas las entidades gubernamentales, corporaciones públicas y los municipios. De igual forma aplica a terceros custodios de información o documentos públicos". Véase, Art. 2 de la Ley Núm. 141-2019, 3 LPRA sec. 9912. Cónsono con el fin de proveer un proceso expedito, el Art. 6 de la Ley Núm. 141-2019, 3 LPRA 9916, permite que cualquier persona, mediante solicitud escrita o por vía electrónica, presente una solicitud requiriendo información pública "sin necesidad de acreditar algún interés particular o jurídico". Dicha solicitud deberá contener "una dirección o correo electrónico para recibir notificaciones, el formato en que desea recibir la información y una descripción de la información". *Íd*.

Solicitada la inspección o reproducción de información pública, la entidad gubernamental deberá producir la misma dentro de un término de 10 días laborales, o 15 días si es una oficina regional, contados a partir de la fecha en que se envió la solicitud. Véase, Art. 7 de la Ley Núm. 141-2019, 3 LPRA sec. 9917. Este término es prorrogable por 10 días adicionales,[7] siempre y cuando la solicitud de prórroga, la cual debe exponer la

---

[7] Al igual que el término inicial, los 10 días adicionales son laborales.

razón por la cual se necesita de tiempo adicional, se notifique dentro del término original. *Id.* Sin embargo, si la entidad gubernamental no contesta dentro del término inicial, se entenderá que ha denegado la solicitud. *Id.* Ante esta situación, la persona que solicita la información podrá recurrir ante el Tribunal. *Id.* Mediante los referidos términos se garantiza que las entidades públicas atiendan reclamos de información pública de forma sencilla y expedita.

Por otra parte, se dispone que, si la entidad gubernamental a la cual se le solicita la inspección de información pública se niega a divulgarla, deberá "especificar por escrito los fundamentos jurídicos en los que se basa la denegatoria o negativa de entregarla en el término establecido". *Id.* En caso de que la entidad gubernamental haya negado el acceso a la información pública solicitada, ya sea porque determinó no hacerlo o porque no la entregó dentro del término requerido, el solicitante tendrá el derecho de presentar un Recurso Especial de Acceso a Información Pública ante el Tribunal de Primera Instancia.  Art. 9 de la Ley Núm. 141-2019, 3 LPRA sec. 9919. Este es el mecanismo adecuado para impugnar la determinación de la entidad gubernamental, y solicitar la producción de la información pública a la cual se le ha negado acceso.

**D.**

Denominada como *Ley de Municipios Autónomos,* Ley Núm. 81-1991, 21 LPRA sec. 4001 *et seq*. (Ley Núm. 81-1991) fue creada con el propósito de garantizar a los municipios la autonomía fiscal y gobierno propio para atender con mayor eficacia las necesidades de sus habitantes. Véase: *Const. José Carro v. Mun. Dorado*, 186 DPR 113, 121 (2012) y *HBA Contractors v. Mun. de Ceiba*, 166 DPR 443, 454 (2005).

Esa *Ley de Municipios Autónomos* fue derogada y sustituida por el Código Municipal de 2020,[8] la cual esta vigente desde entonces y rige el proceso legislativo municipal.

El Art. 1.002 de dicha Ley 107, conocida como Código Municipal de Puerto Rico, establece el propósito de la misma y expresa y citamos:

"Este Código consistirá de una compilación sistemática, ordenada y actualizada de toda legislación municipal aprobada por la Asamblea Legislativa de Puerto Rico referente a la organización, gobierno, administración y funcionamiento de los municipios. La misma describe y ofrece el marco legal y jurídico para el descargue y ejecución de sus facultades, competencias y funciones".

El Art. 1.003 de dicha Ley 107 nos expresa la Declaración de Política Pública. El Art. 1.004 de la Ley 107 dispone y citamos:

"Lo dispuesto en este Código no tendrá efecto retroactivo, si se dispusiere expresamente lo contrario, una debe ser para no perjudicar los derechos adquiridos al amparo de una legislación anterior."

En el Art. 1.005, dicha Ley 107, supra, nos ofrece las normas de interpretación de ese Código. Veamos:

"Los poderes y facultades conferidos a los municipios por este Código, excepto disposición en contrario, se interpretarán liberalmente a favor de los municipios, en armonía con la buena práctica de política pública enunciada en este Código de garantizar a los municipios las facultades necesarias en el orden jurídico, fiscal y administrativo…"

Con ello en mente, dicha Ley 107 nos dice en uno de sus capítulos, comenzando con el Art. 1.020, los poderes y facultades de la Legislatura Municipal. En el Art. 1.020, antes mencionado habla de el número de legisladores municipales del que se compondrá la legislatura municipal dependiendo la población de cada Municipio.

---

[8] Ley 107 del 14 de agosto de 2020.

Luego tenemos varios artículos que detallan la composición de cada legislatura municipal, requisitos para ocupar el cargo de legislador municipal, como se eligen estos, sus normas generales de ética que deben seguir, como cubrir una vacante, de surgir en ese cargo, como se toma posesión del cargo, razones para separar un legislador municipal del cargo, obvenciones a los legisladores municipales, licencia de legisladores municipales y Composición del Comité de Transición en el año de las elecciones generales.

El Capítulo 304 de dicha ley 107, nos habla del proceso legislativo Municipal. Luego del detalle de en que consiste la sesión inaugural, los poderes del presidente de la legislatura municipal y las limitaciones constitucionales de la legislatura municipal, expone las Facultades y deberes generales de la legislatura municipal en el Art. 1.039.[9]

El Art. 1.040 nos habla de otras normas para la aprobación de resoluciones u ordenanzas y el 1.041 expone otras normas para la aprobación de resoluciones u ordenanzas.

El Art 1.048 se titula[10]: Procedimiento parlamentario en las acciones e interpretación del reglamento. Esa disposición comienza con un mandato a cada Legislatura Municipal de aprobar un reglamento. Veamos el primer párrafo de dicho Art. 1.048:

"Cada Legislatura Municipal adoptará un reglamento con el propósito de garantizar el ordenamiento lógico y confiable en lo que respecta al procedimiento parlamentario en sus sesiones. El reglamento deberá asegurar a todos sus miembros la oportunidad de participar de la investigación, análisis y discusión de los asuntos que se encuentra ante la consideración del Cuerpo."

Dicho artículo continúa exponiendo los detalles mínimos que debe cubrir el reglamento. En el inciso (d) de dicho artículo 1.048, antes mencionado, mandata como se debe interpretar ese Reglamento. Veamos lo que dice:

---

[9] 21 LPRA sec. 7065.
[10] 21 LPRA sec. 7074.

"(d) *Interpretación del Reglamento*: El Presidente de la Legislatura Municipal velará por el cumplimiento de las disposiciones de reglamento. A esos fines, tendrá la facultad exclusiva de interpretarlo y aplicarlo de manera justa y liberal, tomando como marco decisorio el orden, la dignidad, el decoro, la integridad del cuerpo y todos sus procedimientos. En aquellos casos en que se susciten cuestiones que no hayan sido previstas en el reglamento, el presidente podrá utilizar, entre otros, pero sin limitarse, los siguientes criterios:

(1) Decisiones anteriores de la Legislatura Municipal.

(2) Decisiones del Senado, o de la Cámara de Representantes, sobre asuntos de igual o similar naturaleza.

(3) La regla correspondiente del Manual de Práctica Parlamentaria que el Cuerpo determine en su Reglamento.

(4) Resolver de conformidad con el uso y la costumbre de la práctica."

Amparados en la disposición de lo que indica el Art. 1.048[11], la Legislatura Municipal de Cataño aprobó un Reglamento el 24 de febrero de 2021, mediante la Resolución Interna Núm. 2, Serie 2020-2021, conocido como Reglamento de la Legislatura Municipal de Cataño (que está vigente) y que es aplicable a todos los legisladores municipales mientras ocupen válidamente dicho cargo, inclusive los electos en la pasada elección de 2024 y que actualmente conforman la legislatura Municipal de Cataño en este cuatrienio, que será del 2025 al 2029.

Ese Reglamento, que aplica a la aquí Recurrida y por la Ley 107-2020, supra, requiere se apliquen las mismas normas a legisladores municipales que aplicamos a legisladores estatales y ello no permite que un legislador municipal, en su carácter oficial, pueda acudir, en su carácter individual (ignorando la realidad de que es legislador municipal) y hacer un reclamo de información al Municipio del que él es legislador municipal, sin hacerlo antes dentro de los trámites de la legislatura municipal a la que pertenece.

Es necesario, además, acudir a la definición de documento público que contiene el Art. 2.015 del Código Municipal. El Código

---

[11] 21 LPRA sec. 7074.

Municipal define en su Art. 2.015 "documento público" como "cualquier escrito, impreso, papel, libro, folleto, fotografía, fotocopia, película, microficha, cinta magnetofónica, mapa, dibujo, plano, cinta, disco compacto o cualquier otro material leído por máquina e informativo, sin importar su forma o características físicas y que se origine, se reciba o se conserve en cualquier unidad administrativa, dependencia u oficina del municipio de acuerdo con este Código".[12]

Si el Recurso Especial que provee otra ley, atenta contra los derechos, normas y procedimientos investigativos de la Legislatura Municipal constituidos en la Constitución de Puerto Rico, el Código Político de 1902, según enmendado, la Ley Núm. 107, supra, según enmendada, conocida como Código Municipal de 2020, no procede.

**E.**

Por su parte la recién aprobada Ley de Núm. 107 de 10 de agosto de 2025, conocida como Ley de Administración y Conservación de Documentos Públicos para el Siglo XXI[13], en su Art 3, inciso (p) define "documento público como:

Documento público. — Se refiere a todo documento que se origina, conserve o reciba en cualquier dependencia del Gobierno de acuerdo con la ley o en relación con el manejo de los asuntos públicos, incluyendo las publicaciones generadas por las dependencias gubernamentales, y que se tenga que conservar permanente o temporalmente como prueba de las transacciones por su utilidad administrativa, valor legal, fiscal, cultural o informativo, según sea el caso, o que se vaya a destruir por no tener valor permanente ni utilidad administrativa, legal, fiscal, cultural o informativa. Incluye aquellos producidos de forma electrónica o digital que cumplan con los requisitos establecidos por las leyes y reglamentos.

---

[12] 21 L.P.R.A. sec. 7175
[13] Ley de Núm. 107 de 10 de agosto de 2025, conocida como Ley de Administración y Conservación de Documentos Públicos para el Siglo XXI derogó la Ley Núm. 5 de 8 de diciembre de 1955, según enmendada, conocida como Ley de Administración de Documentos Públicos de Puerto Rico. Se incluye la definición de "documento público" de la Ley Núm. 107-2025 por ser más amplia.

La Ley Núm. 107-2025, aplica a "las agencias, oficinas y departamentos de la Rama Ejecutiva, así como las corporaciones públicas y municipios".[14]

El Tribunal Supremo de Puerto Rico ha reconocido que "para poder reconocer el derecho a acceso a la información pública, es necesario que lo solicitado pueda clasificarse como un documento público".[15]

**F.**

La doctrina de separación de poderes se refiere a la organización tripartita del Gobierno mediante la delimitación del ámbito de las funciones correspondientes a cada una de sus ramas. La distribución de poderes lleva en sí misma cierto grado de tensión que la propia doctrina atenúa mediante el sistema de pesos y contrapesos. La doctrina es, sin duda, útil en la determinación del ámbito preciso de cada uno de los poderes y, muy especialmente, en la interpretación de disposiciones constitucionales ambiguas.[16]

"En nuestro ordenamiento constitucional de separación de poderes, la Rama Legislativa goza del poder de investigación. El mismo es inherente a la propia existencia del poder legislativo y al quehacer de dicha Rama."[17] El Tribunal Supremo de Puerto Rico ha reiterado, en diversas ocasiones que "la Rama Legislativa goza de amplias facultades en el ejercicio de su poder investigativo."[18] Es mediante este poder que la Asamblea Legislativa, (en el caso de los municipios, la Legislatura Municipal), cumple varias encomiendas inherentes a sus poderes y deberes constitucionales.

---

[14] Art. 3 (r) la Ley Núm. 107-2025
[15] Acevedo Hernández, Ex parte, 191 DPR 410, 415 (2014).
[16] Hernández Agosto v. Romero Barceló, 112 DPR 407 (1982).
[17] Aponte Hernández v. Riera, 175 DPR 156 (2009); Peña Clós v. Cartagena Ortiz, 114 DPR 576 (1983); Pres. del Senado, 148 D.P.R. 737, 761 (1999).
[18] Id.

"En el ejercicio de la encomienda misma de legislar, las cámaras legislativas realizan investigaciones cuyo fin es precisamente legislar o determinar si es deseable aprobar legislación."[19] Es reconocido que las investigaciones legislativas sirven de mecanismo para fiscalizar al gobierno y a la Rama Ejecutiva, sin embargo, el ejercicio de este poder no es absoluto.[20] "[L]as resoluciones que dan vida a una investigación legislativa deben ser específicas, de forma tal que los tribunales no se vean obligados a realizar ejercicios de racionalización retrospectiva".[21]

Conforme a las facultades y deberes conferidas por el Código Municipal, la Legislatura Municipal puede "realizar las investigaciones y vistas públicas necesarias para la evaluación de los proyectos de ordenanzas y resoluciones que le tengan ante su consideración o para propósitos de desarrollar cualquier legislación municipal, incluyendo el poder de fiscalización."[22] Si bien es cierto que la Legislatura Municipal tiene el poder de investigar, este poder investigativo no es uno absoluto, ni ilimitado. "[L]a transparencia en el manejo de los asuntos de gobierno goza de primordial importancia en nuestra jurisdicción. Sin duda, la facultad legislativa de investigación asegura dicha transparencia y como resultado de ello se fortalece la democracia. Empero, como últimos intérpretes de las leyes y de nuestra Constitución, debemos asegurar que la Rama Legislativa actúe dentro de sus prerrogativas constitucionales y que no se inmiscuya en los poderes de otras ramas de nuestro gobierno."[23] Para que una investigación sea eficaz y cumpla estrictamente con

---

[19] Aponte Hernández v. Riera, supra.; Watkins v. U.S. 354 U.S. 178, 201 (1957).
[20] Aponte Hernández v. Riera, supra; Peña Clós v. Cartagena Ortiz, supra.
[21] Aponte Hernández v. Riera, supra.
[22] Véase, Art 1.039(p) del Código Municipal.
[23] Aponte Hernández v. Riera, supra; Santa Aponte v. Srio. del Senado, 105 D.P.R. 750 (1977); Barenblatt v. United States, 360 U.S. 109, 112 (1959).

el poder delegado por virtud de ley y, ese ejercicio no sea arbitrario, es preciso que se establezca en la resolución el interés o propósito legislativo que se persigue. Además, en una resolución se tiene que definir claramente la información o documentación que se pretende solicitar y la misma debe ser pertinente. Estos elementos se tienen que dar para que el poder investigativo de la Rama Legislativa, en este caso de la Legislatura Municipal, se pueda validar y no se viole el principio de separación de poderes que ha sido conferido por la Constitución de Puerto Rico. Las solicitudes de información y documentos que somete un legislador municipal de la Legislatura Municipal de Cataño a la Rama Ejecutiva, en su carácter oficial como legislador municipal, deben canalizarse por los procedimientos internos y colegiados que rigen las investigaciones y requerimientos de información de la Legislatura Municipal de Cataño amparados en la Constitución de Puerto Rico, el Código Político de 1902, según enmendado, el Código Municipal y el Reglamento de la Legislatura Municipal de Cataño. En el caso de los legisladores municipales, el Código Municipal y el Reglamento de la Legislatura Municipal de Cataño establecen que toda solicitud de información en carácter oficial debe presentarse mediante resolución aprobada por el cuerpo legislativo, actuando de forma colegiada y que "todo miembro de la Legislatura debe tener una legítima oportunidad de expresarse"[24]. Así lo ha reiterado el Tribunal Supremo en *Silva v. Hernández Agosto*, 118 DPR 45 (1986), indicando que el poder de investigación legislativa no es individual, sino colegiado. Para cumplir con los propósitos investigativos antes señalados la Legislatura Municipal de Cataño aprobó en el Reglamento de la Legislatura Municipal de Cataño el Art. X sobre Ordenanzas,

---

[24] Reglamento de la Legislatura Municipal, Art. VIII(3)(p).

Resoluciones[25], Acuerdos y Disposiciones el Reglamento que regula la forma y manera en que sus miembros, en su carácter oficial, pueden hacer una solicitud de información a entidades gubernamentales, que incluye al Municipio, esto mediante la aprobación de una Resolución. Énfasis nuestro. Por su parte el Art. VIII, inciso 3, sub inciso o, dispone sobre las Reglas de Debate en Nuestra Legislatura que "[l]a petición de cualquier Legislador a los fines de solicitar información o documentos que se encuentren en poder del Ejecutivo será requerido a través del Presidente en Sesión Ordinaria y toda la petición de información y/o documentos del Cuerpo o que alguna Comisión desee, en (sic.) este caso deberá tener el consentimiento del Cuerpo o de la Comisión." Énfasis nuestro.

### III.

La peticionaria ante el TPI escribe una carta como legisladora Municipal y 22 días más tarde trae esa misma carta al TPI, para reclamar, bajo la Ley Núm. 141-2019, que antes hemos analizado, olvidando su posición de legisladora municipal y olvidando que la petición de información que realiza lo hace contra el Municipio del que ella fue electa legisladora municipal y que todavía ocupa dicho cargo.

No procede permitir que un legislador municipal realice una búsqueda de información sin contar con el aval de los miembros que forman parte del cuerpo legislativo colegiado al que pertenece. Someter solicitudes de información a título personal, contra el Municipio que quien la solicita es legislador municipal, equivale a evadir el proceso aprobado por el cuerpo legislativo al

---

[25] El Código Municipal define "Resolución" como la "legislación de la jurisdicción municipal que habrá de perder su vigencia al cumplirse su finalidad y cualquier medida, disposición u orden para regir el funcionamiento interno de la Legislatura Municipal." Véase, Art. 8.001(236).

que pertenece ese legislador y sin tener consentimiento y consenso de ese cuerpo no es posible. El Recurso Especial de la Ley 141, supra, cuando se utiliza por un legislador municipal, para solicitar información del Municipio del que eres legislador municipal, atenta contra los derechos y normas vigentes en ese trámite legislativo, de la legislatura municipal del Municipio de Cataño y no procede. Los errores señalados fueron cometidos.

Máximo que en el Recurso Especial que aquí evaluamos se solicita información que requiere análisis, pues no se limita a pedir documentos públicos.

Por ello procede expedir el recurso presentado y desestimar el Recurso Especial pendiente ante el TPI.

## IV.

Por los fundamentos antes expuestos, los que se hacen formar parte de esta Sentencia, se expide el auto de *certiorari y se deja sin efecto la orden contra la que se recurre y se desestima el Recurso Especial presentado por la legisladora municipal contra el Municipio del que ella es legisladora municipal, sin seguir el trámite requerido en la reglamentación aplicable.*

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones